RECEIPT # 52328
AMOUNT $ 150.00
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. Kim Abaid
DATE 12-9-03

UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE
2003 DEC -9 P 3: 48
U.S. DISTRICT COURT
DISTRICT OF MASS.

Susan Waters,
   Plaintiff,

vs.

Philips Medical Systems, N.A., Inc.,
   Defendant.

CIVIL ACTION NO.

03-12480 NG

MAGISTRATE JUDGE Cohen

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### Jurisdiction

1. Jurisdiction is conferred by 28 U.S.C. 1331, as the same arises under the laws of the United States.

### Parties

2. The Plaintiff, Susan Waters, is a resident of the Commonwealth of Massachusetts.

3. The Defendant, Philips Medical Systems, is a Delaware Corporation whose principal place of business is not located in Massachusetts.

### Facts

4. In 2000, the Plaintiff, Waters, became employed as a full time salesperson for Philips.

5. Plaintiff's position throughout her tenure with Philips related to the sales and service of medical systems.

6. Throughout her tenure with Philips, Waters met or greatly exceeded Philips' performance criteria.

7. In the year 2002, Waters was the top producing salesperson in Cardiology Sales in the United States for Philips. Waters was otherwise throughout her tenure with Philips one of its top performers, and received letters of excellence and others formal recognition for these outstanding and consistent accomplishments.

8. In May, 2003, Waters became pregnant, and, in June 2003, that fact was generally disclosed to her colleagues at a Boston dinner symposium. Then present was Waters' Manager, Keating.

9. By July 2003, Waters had begun to obviously physically show with regard to the fact that she was pregnant.

10. From that point forward, it was known among Waters' colleagues and Philips Management, including Keating, that she was then pregnant.

11. On August 19, 2003, Waters received from Keating a so called "Performance Improvement Plan", which Plan falsely asserted that Water's performance was lacking in several material respects.

12. Although at the exact time of plan delivery as above Waters was marginally below her sales quota, the same is a common happenstance at Philips due to known and predictable sales

fluctuations / expectations within the Philips sales force.

13. Other Philips sales associates similarly situated to Waters, both male, non-pregnant female, and those for whom the FMLA leave was not otherwise then at issue, were not then so singled out at the time for so called "performance improvement plans" as was Waters.

14. The so called "performance improvement plan", or PIP, was delivered to Waters as a pretext to disguise Philips' intention to terminate Waters on account of her pregnancy and the medical attention / leave associated therewith that she would naturally request under the Family Medical Leave Act, for which she was qualified.

15. Prior to the time that the Plan was formulated by Keating, Keating had actual knowledge that Waters was pregnant.

16. Although Philips' policy is to supposedly work with an employee such as Waters upon any indication of sub-par performance, and to give at least several gradations of warnings before termination, this Policy was not followed with regard to Waters.

17. Namely, after not working at all with Waters for the month of September 2003, Keating did work with Waters, but for only one day in October 2003 (October 2nd).

18. However, on October 2 as above, Keating indicated that Waters was preforming at the expected level, and that the

plan was not then at issue.

19. Waters also formally requested of Keating on October 2, 2003, that she still needed to work out the details of her upcoming FMLA pregnancy leave (so that she could tend to her newborn upon birth).

20. On November 3, Waters informed Keating that she was very likely to meet her quota. At that time, Keating was also then fully aware that Waters' sales had been substantially increasing for several months, further buttressing the fact that Waters would indeed likely make her year end quota.

21. Soon thereafter, Waters needed hospitalization on account of the pregnancy, and so informed Keating, who then replied for her to take whatever time she needed.

22. As it turned out, the complication was stress induced.

23. After such hospitalization, Waters was ordered to have bed rest until November 12th.

24. Upon her return to work on the 12th, Waters was called in and abruptly fired by Keating.

25. During the "meeting" at which Waters was fired, no explanation by Keating was given to Waters as to why she was being fired.

26. A so called Human Resources Manager was then put on speaker phone at the meeting, which Manager then openly admitted that the Company was fully aware that Waters was and had

been pregnant.

27. The HR Manager also then falsely claimed that the so called "PIP" was "not working out", though she did not explain what that meant.

28. No indication of any so called continued sub-par performance was communicated to Waters post delivery of the plan, despite promises / Philips' policy to the contrary.

29. The above described conduct by Philips was in direct violation of its own written company policies regarding discrimination, pregnancy, pregnancy leave, F.M.L.A., F.M.L.A. Leave, and for Reprisal for engaging in any of these protected activities.

30. At all times, Waters met the Employer's legitimate job performance threshold, and Waters's position otherwise remained open, and/or Philips sought to fill the same, at or near Waters' termination.

31. Philips's above said acts have proximately caused Waters to lose employment income and associated benefits, to have a diminished earning capacity, to lose goodwill and standing within Philips, to suffer personal injury including emotional distress and humiliation, caused a diminution to her quality of life and dignity, and the said acts have otherwise injured her.

## COUNT I
### The Family and Medical Leave Act of 1993
### 29 U.S.C. 2601, et seq.

32) The Plaintiff adopts by reference all above allegations, and further alleges:

33) All conditions precedent to this Count, if any, have been complied with.

34) Waters is an eligible employee, as defined by 29 U.S.C. § 2611.

35) Philips is an employer, as defined by 29 U.S.C. § 2611.

36) Pursuant to 29 U.S.C. 2612(1), Waters was entitled to a total of 12 workweeks of leave due to her pregnancy, which was adequately requested.

37) The above described acts of Philips, committed by and through its authorized agents and employees, interfered with, restrained or denied the exercise or attempted exercise by Waters of the rights protected by 29 U.S.C. 2601, et seq.

38) Waters was terminated for exercising her rights under 29 U.S.C. 2601, et seq., and/or for opposing practices made unlawful by 29 U.S.C. 2601, et seq.

WHEREFORE, the Plaintiff, Susan Waters, demands Judgment against Philips Medical Systems, North America, Inc., in the amount of $300,000.00 compensatory damages, plus her lost wages, the said amounts to be DOUBLED pursuant to 29 U.S.C. 2617(a)(1)(A)(iii), together with interest, reasonable attorney's fees, and the costs of this action.

<u>THE PLAINTIFF DEMANDS A TRIAL BY JURY</u>

Respectfully submitted,
Susan Waters,
By her attorney,

_____
Matthew Cobb
Law Office of Matthew Cobb
101 Tremont Street
Boston, Massachusetts   02108
(617) 357-7300
Mass. Bar No. 556677

UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

COURT COPY

Susan Waters,                          )
                                       )   CIVIL ACTION NO.
    Plaintiff,                         )
                                       )
vs.                                    )
                                       )
Philips Medical Systems, N.A., Inc.,   )
                                       )
    Defendant.                         )

COMPLAINT AND DEMAND FOR TRIAL BY JURY

Jurisdiction

1. Jurisdiction is conferred by 28 U.S.C. 1331, as the same arises under the laws of the United States.

Parties

2. The Plaintiff, Susan Waters, is a resident of the Commonwealth of Massachusetts.

3. The Defendant, Philips Medical Systems, is a Delaware Corporation whose principal place of business is not located in Massachusetts.

Facts

4. In 2000, the Plaintiff, Waters, became employed as a full time salesperson for Philips.

5. Plaintiff's position throughout her tenure with Philips related to the sales and service of medical systems.

Page 1 of 7

6. Throughout her tenure with Philips, Waters met or greatly exceeded Philips' performance criteria.

7. In the year 2002, Waters was the top producing salesperson in Cardiology Sales in the United States for Philips. Waters was otherwise throughout her tenure with Philips one of its top performers, and received letters of excellence and others formal recognition for these outstanding and consistent accomplishments.

8. In May, 2003, Waters became pregnant, and, in June 2003, that fact was generally disclosed to her colleagues at a Boston dinner symposium. Then present was Waters' Manager, Keating.

9. By July 2003, Waters had begun to obviously physically show with regard to the fact that she was pregnant.

10. From that point forward, it was known among Waters' colleagues and Philips Management, including Keating, that she was then pregnant.

11. On August 19, 2003, Waters received from Keating a so called "Performance Improvement Plan", which Plan falsely asserted that Water's performance was lacking in several material respects.

12. Although at the exact time of plan delivery as above Waters was marginally below her sales quota, the same is a common happenstance at Philips due to known and predictable sales

fluctuations / expectations within the Philips sales force.

13. Other Philips sales associates similarly situated to Waters, both male, non-pregnant female, and those for whom the FMLA leave was not otherwise then at issue, were not then so singled out at the time for so called "performance improvement plans" as was Waters.

14. The so called "performance improvement plan", or PIP, was delivered to Waters as a pretext to disguise Philips' intention to terminate Waters on account of her pregnancy and the medical attention / leave associated therewith that she would naturally request under the Family Medical Leave Act, for which she was qualified.

15. Prior to the time that the Plan was formulated by Keating, Keating had actual knowledge that Waters was pregnant.

16. Although Philips' policy is to supposedly work with an employee such as Waters upon any indication of sub-par performance, and to give at least several gradations of warnings before termination, this Policy was not followed with regard to Waters.

17. Namely, after not working at all with Waters for the month of September 2003, Keating did work with Waters, but for only one day in October 2003 (October 2nd).

18. However, on October 2 as above, Keating indicated that Waters was preforming at the expected level, and that the

plan was not then at issue.

19. Waters also formally requested of Keating on October 2, 2003, that she still needed to work out the details of her upcoming FMLA pregnancy leave (so that she could tend to her newborn upon birth).

20. On November 3, Waters informed Keating that she was very likely to meet her quota. At that time, Keating was also then fully aware that Waters' sales had been substantially increasing for several months, further buttressing the fact that Waters would indeed likely make her year end quota.

21. Soon thereafter, Waters needed hospitalization on account of the pregnancy, and so informed Keating, who then replied for her to take whatever time she needed.

22. As it turned out, the complication was stress induced.

23. After such hospitalization, Waters was ordered to have bed rest until November 12th.

24. Upon her return to work on the 12th, Waters was called in and abruptly fired by Keating.

25. During the "meeting" at which Waters was fired, no explanation by Keating was given to Waters as to why she was being fired.

26. A so called Human Resources Manager was then put on speaker phone at the meeting, which Manager then openly admitted that the Company was fully aware that Waters was and had

been pregnant.

27. The HR Manager also then falsely claimed that the so called "PIP" was "not working out", though she did not explain what that meant.

28. No indication of any so called continued sub-par performance was communicated to Waters post delivery of the plan, despite promises / Philips' policy to the contrary.

29. The above described conduct by Philips was in direct violation of its own written company policies regarding discrimination, pregnancy, pregnancy leave, F.M.L.A., F.M.L.A. Leave, and for Reprisal for engaging in any of these protected activities.

30. At all times, Waters met the Employer's legitimate job performance threshold, and Waters's position otherwise remained open, and/or Philips sought to fill the same, at or near Waters' termination.

31. Philips's above said acts have proximately caused Waters to lose employment income and associated benefits, to have a diminished earning capacity, to lose goodwill and standing within Philips, to suffer personal injury including emotional distress and humiliation, caused a diminution to her quality of life and dignity, and the said acts have otherwise injured her.

COUNT I
The Family and Medical Leave Act of 1993
29 U.S.C. 2601, et seq.

32) The Plaintiff adopts by reference all above allegations, and further alleges:

33) All conditions precedent to this Count, if any, have been complied with.

34) Waters is an eligible employee, as defined by 29 U.S.C. § 2611.

35) Philips is an employer, as defined by 29 U.S.C. § 2611.

36) Pursuant to 29 U.S.C. 2612(1), Waters was entitled to a total of 12 workweeks of leave due to her pregnancy, which was adequately requested.

37) The above described acts of Philips, committed by and through its authorized agents and employees, interfered with, restrained or denied the exercise or attempted exercise by Waters of the rights protected by 29 U.S.C. 2601, et seq.

38) Waters was terminated for exercising her rights under 29 U.S.C. 2601, et seq., and/or for opposing practices made unlawful by 29 U.S.C. 2601, et seq.

WHEREFORE, the Plaintiff, Susan Waters, demands Judgment against Philips Medical Systems, North America, Inc., in the amount of $300,000.00 compensatory damages, plus her lost wages, the said amounts to be DOUBLED pursuant to 29 U.S.C. 2617(a)(1)(A)(iii), together with interest, reasonable attorney's fees, and the costs of this action.

THE PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,
Susan Waters,
By her attorney,

Matthew Cobb
Law Office of Matthew Cobb
101 Tremont Street
Boston, Massachusetts 02108
(617) 357-7300
Mass. Bar No. 556677